# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

GREG SHARP,                                                :

                    Plaintiff,

   -vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,
                    Defendant.                :

Case No. 3:09-cv-042

District Judge Walter Herbert Rice
Magistrate Judge Michael R. Merz

## REPORT AND RECOMMENDATIONS

Plaintiff brought this action pursuant to 42 U.S.C. §405(g) for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v. Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence

is more than a mere scintilla, but only so much as would be required to prevent a directed verdict (now judgment as a matter of law), against the Commissioner if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988); *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978); *Houston v. Secretary of Health and Human Services*, 736 F.2d 365 (6th Cir. 1984); *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984). However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner, supra.* If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion. *Elkins v. Secretary of Health and Human Services*, 658 F.2d 437, 439 (6th Cir. 1981).

To qualify for disability insurance benefits (SSD), a claimant must meet certain insured status requirements, be under age sixty-five, file an application for such benefits, and be under a disability as defined in the Social Security Act, 42 U.S.C. § 423. To establish disability, a claimant must prove that he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). Secondly, these impairments must render the claimant unable to engage in the claimant's previous work or in any other substantial gainful employment which exists in the national economy. 42 U.S.C. §423(d)(2).

The Commissioner has established a sequential evaluation process for disability determinations. 20 C.F.R. §404.1520 . First, if the claimant is currently engaged in substantial

gainful activity, the claimant is found not disabled. Second, if the claimant is not presently engaged in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments; if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1. If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. §404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment; if not, the claimant is found not disabled. Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to the Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform. *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff filed a application for SSD on October 29, 2003, alleging disability from July 8, 2003, due to a neck impairment. (Tr. 72-74; 88). Plaintiff's application was denied initially and on reconsideration. (Tr. 54-57; 61-62). During that time, Plaintiff filed an application for SSD which was escalated to the hearing level. *See,* Tr. 28. Administrative Law Judge Melvin Padilla held a hearing, (Tr. 471-504), following which he determined that Plaintiff is not disabled. (Tr. 25-44). The Appeals Council denied Plaintiff's request for review, (Tr. 12-15), and Judge Padilla's decision became the Commissioner's final decision.

In determining that Plaintiff is not disabled, Judge Padilla found that Plaintiff has severe cervical spine disorder (congenital abnormalities and degenerative joint disease with late onset nerve root injury), borderline intellectual functioning, and possible depressive/anxiety feature,

3

but that he does not have an impairment or combination of impairments that meets or equals the Listings. (Tr. 32, § 3; 36, ¶ 4). Judge Padilla also found that Plaintiff has the residual functional capacity to perform a limited range of light work. (Tr. 37, ¶ 5). Judge Padilla then used sections 202.20 through 202.22 of the Grid as a framework for deciding, coupled with a vocational expert's (VE) testimony, and concluded that there is a significant number of jobs in the economy that Plaintiff is capable of performing. (Tr. 43, ¶ 10). Judge Padilla concluded that Plaintiff is not disabled and therefore not entitled to benefits under the Act. (Tr. 44).

The transcript contains a copy of Plaintiff's school records which indicate that when Plaintiff was in the second grade, his IQ as measured on the Stanford Binet intelligence test was 74 and in the fifth grade, his IQ was 71. (Tr. 82-86). Those records also indicate that when he was in the fifth grade, Plaintiff was assigned to special education classes. *Id.* Plaintiff graduated from high school in a vocational program in food services. *Id.*

Plaintiff sustained a work-related injury when he slipped and fell at work in October, 2001. (Tr. 317-22).

The transcript contains a copy of treating physician Dr. Bennett's office notes dated December 27, 2002, through January 5, 2005. (Tr. 200-69). Those records show that Dr. Bennett first treated Plaintiff on December 27, 2002, for complaints of neck pain at which time she noted that Plaintiff had neck spasms. *Id.* On January 20, 2003, Dr. Bennett again treated Plaintiff for his complaints of neck pain. *Id.* Dr. Bennett noted that Plaintiff reported that he had not had any care for his neck other than the initial work-up at the time of his October, 2001, industrial accident. *Id.* Dr. Bennett also noted that Plaintiff's cervical range of motion was decreased. *Id.* Over time, Dr. Bennett monitored Plaintiff's complaints of neck pain. *Id.*

4

Plaintiff consulted with head and neck specialist Dr. Adib on January 31, 2003, at which time Dr. Adib noted that Plaintiff reported that he had been having pain in his right occiput since he fell and that he was treated with physical therapy without much improvement. (Tr. 133). Dr. Adib also noted that Plaintiff had no symptoms of inability to turn his head. *Id.* Dr. Adib reported that Plaintiff's examination was normal and that a recent cervical CT scan demonstrated some degenerative disc disease at the level of C4-5. *Id.*

An April 29, 2003, EMG of Plaintiff's upper right extremity was normal. (Tr. 134).

The transcript contains a copy of treating neurosurgeon Dr. Goodall's correspondence to Dr. Bennett dated June 12, 2003, through February 24, 2005. (Tr. 280-93). Dr. Goodall first reported on June 12, 2003, that Plaintiff's reflexes were equal, his muscle strength testing was good, he had decreased sensory perception throughout his right and left arms, and that he had a decreased range of cervical motion at all planes. *Id.* Dr. Goodall also reported that Plaintiff's recent x-rays showed a congenital fusion at C6-7 and C7-T1, and a CAT scan showed degenerative changes at multiple levels. *Id.* On September 16, 2003, Dr. Goodall reported that Plaintiff's recent MRI revealed multiple levels of spondylitic changes throughout the range of the cervical spine, his EMG was normal, and that his symptoms and physical findings were consistent with cervical radiculopathy. *Id.* Over time, Dr. Goodall continued to report that Plaintiff had decreased ranges of cervical motion, a positive spurlings to the right, and suboccipital tenderness greater on the right. *Id.* On September 7, 2004, Dr. Goodall reported that Plaintiff had an MRI which failed to show a definite surgical lesion. *Id.* Dr. Goodall noted on November 23, 2004, that Plaintiff had undergone a epidural block and that Plaintiff reported his pain was aggravated by the block. *Id.* Dr. Goodall subsequently reported that Plaintiff had marked decreased range of motion in the cervical region

with moderate paraspinal reactivity present and suboccipital tenderness. *Id.*

The record contains a copy of Plaintiff's treatment notes from Dr. Rogers of the Grandview Pain Management Center dated September 30, 2003, through December 5, 2005. (Tr. 270-79; 407-20). At the time Dr. Rogers first evaluated Plaintiff he reported that Plaintiff complained of pain in the right posterior neck with radiation down the right arm to the fingers, of dropping things, and of numbness into his right arm as well as paresthesias and dysesthesias. *Id.* Dr. Rogers also reported that Plaintiff had significant right shoulder drop, tenderness with palpation over the right acromioclavicular joint, was extremely tender across his deltoid, and that passive range of motion of the right shoulder was extremely painful. *Id.* Dr. Rogers identified Plaintiff's diagnoses as contusion of face, scalp, and neck, and sprain/strain of the right shoulder. *Id*

The record contains a copy of Plaintiff's treatment notes from Cassano Health Center dated December 10, 2003, through March 8, 2006. (Tr. 294-315; 384-406). Those notes reveal that Plaintiff received treatment at that facility for various complaints and medical conditions including flu symptoms, hearing loss, dermatitis, right sided neck pain, somatic dysfunction of cervical spine and ribs, cervical degenerative disc disease, shoulder pain, and right shoulder sprain. *Id.* Those notes also reveal that Plaintiff underwent several injections for posttraumatic arthritis of the AC joint of his right shoulder with significant pain relief. *Id.*

Examining psychologist Dr. Boerger reported on February 2, 2004, that Plaintiff graduated from high school and a vocational program in food services, was in special education, was rather unkempt, appeared anxious, and that his speech was normal although he did display some mild comprehension problems which may have been associated with anxiety. (Tr. 156-62). Dr. Boerger also reported that Plaintiff's affect was appropriate, alert and oriented, appeared to be aware

6

of his health and learning problems, his verbal IQ was 80, his performance IQ was 69, and his full scale IQ was 73, and that he read at the 3.4 grade level. *Id.* Dr. Boerger noted that Plaintiff's diagnoses were generalized anxiety disorder, dysthymic disorder, and borderline intellectual functioning. *Id.* Dr. Boerger assigned Plaintiff a GAF of 52. *Id.* Dr. Boerger opined that Plaintiff's ability to relate to others was mildly impaired, his abilities to understand and follow instructions and maintain attention to perform simple repetitive tasks were moderately impaired, and that his ability to withstand the stress and pressures associated with day-to-day work activity was moderately to markedly impaired. *Id.*

Dr. Bennett reported on February 22, 2004, that Plaintiff had arthritis in his neck and mild spurring at C3-4 and C4-5, and that his condition was poor but stable. (Tr. 223-24). Dr. Bennett opined that Plaintiff was able to stand/walk for a total of four hours in an eight-hour day and for two hours without interruption, sit for eight hours in an eight-hour day and for eight hours without interruption, and frequently lift/carry up to twenty-five pounds. *Id.* Dr. Bennett also opined that Plaintiff was unemployable. *Id.*

Examining physician Dr. Padamadan reported on February 17, 2004, that Plaintiff had a congenital webbed neck, a dramatically decreased cervical range of motion which may have been a Waddell's sign of neck impairment therefore indicating that the remainder of his cervical ROM testing was unreliable, and that in spite of his so-called weakness of the right upper extremity, there were no clinical indications of atrophy or spasticity. (Tr. 163-71). Dr. Padamadan also reported that examination of Plaintiff's lower extremities was normal, and that his motor, sensory, and reflex exams were intact. *Id.* Dr. Padamadan noted that Plaintiff's diagnoses were neck pain with Waddell's signs and congenital webbed neck. *Id.* Dr. Padamadan opined that in the absence

7

of objective findings of any functional impairment, there was no indication for limitation of physical activities. *Id.*

On September 10, 2004, Dr. Rogers reported that Plaintiff had come to see him last year, that an MRI of the shoulder showed mild hypertrophic changes, and that a cervical MRI showed spondylosis and a spur formation. (Tr. 275). Dr. Rogers subsequently performed a series of cervical epidural blocks. (Tr. 271-74).

Plaintiff consulted with neurosurgeon Dr. West on September 20, 2004, at which time Dr. West reported that Plaintiff had mild palpable tenderness on the right cervical musculature, limited ranges of cervical motion, mild weakness of the biceps bilaterally, and that reflexes were normal. (Tr. 198-99). Dr. West also reported that he reviewed Plaintiff's objective test results including his myelogram and MRI. *Id.* Dr. West identified Plaintiff's diagnoses as mild degenerative disc disease at multiple levels and congenital abnormalities of his cervical spine. *Id.* Dr. West opined that Plaintiff did not have a surgical lesion. *Id.*

The record reveals that Plaintiff received chiropractic treatments from Ted Murdock during the period June, 2005, to January, 2006. (Tr. 341-55; 316).

In March, 2006, Dr. Weber of the Cassano Health Center reported that he had been treating Plaintiff for his right shoulder pain, that Plaintiff had a negative work-up, had attended physical therapy which seemed to aggravate his shoulder condition, and that he had a cervical spine injury which had been treated in the past. (Tr. 384). Dr. Weber also reported that he believed that Plaintiff's right shoulder pain was coming from his neck, that he had injected Plaintiff's shoulder on numerous occasions without any relief of pain, and that Plaintiff also complained of numbness and tingling down his right arm into his hand involving all of his fingers and thumb. *Id.* Dr. Weber

opined that Plaintiff might benefit from care with neurosurgery and possible pain management. *Id.*

Plaintiff consulted with neurosurgeon Dr. Minella on March 1, 2006, at which time Dr. Minella reported that Plaintiff's examination was compromised because of cooperation but that movement of his neck was severely limited, strength testing could not be performed, pin prick was avoided because of the questionable nature of responses, his biceps jerk was reduced bilaterally, and that he seemed to have possible radicular pain into the right arm in a C-6 distribution. (Tr. 432). Dr. Minella also reported that Plaintiff's MRI indicated some disease at C4-5 which may be related to overlap of enervation. *Id.*

An April 19, 2006, EMG revealed evidence of a mild predominantly C5-6 cervical nerve root injury on the right and no evidence of cervical radiculopathy, peripheral neuropathy, or any other entrapment neuropathy. (Tr. 435-46).

On June 5, 2006, Dr. Minella reported that Plaintiff's MRI showed spondylosis and degenerative disc disease at C4-5 and C5-6, especially on the right (see, Tr. 437-38), and that he recommended Plaintiff undergo surgery. *Id.*

Additional evidence which Plaintiff submitted to the Appeals Council reflects that Plaintiff underwent cervical spine surgery which Dr. Minella performed in September, 2006, and again in February, 2007. (Tr. 452-70).

In his Statement of Errors, Plaintiff essentially alleges that the Commissioner erred by relying on treating physician Dr. Bennett's opinion, by rejecting evidence that supports his claim that he is totally disabled, and by exaggerating his daily activities, thereby finding that he was not entirely credible with respect to his complaints of disabling pain. (Doc. 8). Plaintiff also argues that this matter should be remanded for consideration of the new and material evidence which he

9

submitted to the Appeals Council. *Id.*

Plaintiff argues first that the Commissioner erred by relying on treating physician Dr. Bennett's assessment of his residual functional capacity.

Judge Padilla based his conclusion that Plaintiff is capable of performing a limited range of light work "mainly on the assessment by Dr. Bennett." (Tr. 38).

In assessing the medical evidence supporting a claim for disability benefits, the ALJ must adhere to certain standards. *Blakley v. Commissioner of Social Security,* 581 F.3d 399 (6th Cir. 2009). One such standard, known as the treating physician rule, requires the ALJ to generally give greater deference to the opinions of treating physicians than to the opinions of non-treating physicians because

> these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone of from reports of individual examinations, such as consultative examinations or brief hospitalizations.

*Id.* at 406, *quoting*, *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544, (6th Cir. 2004), *quoting,* 20 C.F.R. § 404.1527(d)(2).

The ALJ "must" give a treating source opinion controlling weight if the treating source opinion is "well supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with the other substantial evidence in [the] case record." *Blakley, supra, quoting, Wilson, supra.*

First, the Court notes, as did Judge Padilla that Dr. Bennett is the only treating physician to offer an opinion as to Plaintiff's abilities to perform exertional work-related activities. Plaintiff does not take issue with Judge Padilla's determination that Dr. Bennett's opinion is

supported by her treatment notes and is consistent with other evidence of record. Indeed, a review of Dr. Bennett's treatment notes reveals that are essentially a recitation of Plaintiff's subjective complaints and of the primarily normal test results. Although Dr. Bennett documented some positive clinical findings on occasions, those findings were primarily cervical spasms and a reduced range of cervical motion. Dr. Bennett's clinical notes, including the reports of the objective tests, support her opinion as to Plaintiff's residual functional capacity.

In determining Plaintiff's residual functional capacity, Judge Padilla noted that there is a conflict between Dr. Padamadan's opinion and the reviewing physicians' opinions. (Tr. 38). Indeed, although Dr. Padamadan concluded that Plaintiff had no physical limitations, the reviewing physicians essentially determined that Plaintiff is capable of performing a limited range of light work. (Tr. 188-93). Judge Padilla resolved the conflicts by adopting the reviewing physicians' opinions because they were most consistent with Dr. Bennett's opinion. (Tr. 38). It is, of course, the Commissioner's function to resolve conflicts in the evidence. *Cf., Richardson v. Perales,* 402 U.S. at 399; *see also, Mullins v. Secretary of Health and Human Services,* 836 F.2d 980 (6th Cir. 1987).

Under these facts, the Commissioner did not err by relying on treating physician Dr. Bennett's opinion.

Plaintiff argues next that the Commissioner erred by failing to consider the objective evidence which supports his allegation that he is totally disabled. In support, Plaintiff has offered his interpretation of the evidence.

The question in a Social Security case is not whether the evidence supports Plaintiff's allegations of disability, but rather whether the Commissioner's decision is supported by substantial

11

evidence on the record as a whole.  *See*, *Perales, supra.*

The Court notes first that Judge Padilla acknowledged and considered Plaintiff's lifelong history of congenital deformities of the cervical and upper thoracic spines. (Tr. 39).

It may be true that there is evidence in the record which arguably supports Plaintiff's allegation of total disability.  For example, as noted above, Dr. Bennett did document some objective clinical findings.  In addition, Dr. Rogers reported that Plaintiff had tenderness and reduced ranges of motion and Dr. Goodall noted some decreased sensory perception and decreased ranges of motion.  However, the presence of positive clinical findings is not conclusive evidence of disability. *Cf., Young v. Secretary of Department of Health and Human Services,* 925 F.2d 146 (6th Cir. 1990). Indeed, clinical findings do not necessarily indicate the severity of the condition nor the limitations, if any, that they impose.  *Id.*  Nevertheless, as noted, the question is not whether there is evidence that supports Plaintiff's claim of disability but rather whether the Commissioner's decision is supported by substantial evidence.  As noted *infra*, this Court concludes that it is so supported, particularly in light of treating physician Dr. Bennett's opinion and the minimal objective clinical findings.

Plaintiff argues next that the Commissioner erred by finding that he was not entirely credible.

It is, of course, for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.  *Rogers v. Commissioner of Social Security,* 486 F.3d 234, 247 (6th Cir. 2007)(citations omitted). An administrative law judge's credibility findings are entitled to considerable deference and should not be lightly discarded.  *See, Villarreal v. Secretary of Health and Human Services,* 818 F.2d 461 (6th Cir. 1987); *Casey v. Secretary of Health and*

*Human Services,* 987 F.2d 1230 (6th Cir. 1993). Determination of credibility related to subjective complaints rests with the ALJ and the ALJ's opportunity to observe the demeanor of the claimant is invaluable and should not be discarded lightly. *Gaffney v. Bowen,* 825 F.2d 98 (6th Cir. 1987).

In concluding that Plaintiff was not entirely credible, in addition to Dr. Bennett's opinion, Judge Padilla noted that the record indicated "issues of questionable presentation on clinical exams" including exaggeration of symptoms and that Plaintiff engaged in a wide range of activities. (Tr. 38-41).

First, as noted above, treating physician Dr. Bennett, as well as the reviewing physicians, essentially opined that Plaintiff has the residual functional capacity to perform a limited range of light work

Dr. Padamadan reported that Plaintiff had exhibited a "dramatically decreased" range of cervical spine motion on initial examination. However, Dr. Padamadan also reported that when he asked Plaintiff to look at something on his abdomen, Plaintiff bent his neck and looked "quite normally" suggesting not only a Waddell's sign, but indicating the remainder of the cervical testing was unreliable. Dr. Padamadan also noted that in spite of Plaintiff's "so-called weakness" of his right arm, there were no clinical indications of atrophy or spasticity.

Dr. Weber of the Cassano Health Center reported that in spite of Plaintiff's complaints of shoulder pain, his work-up was negative. In addition, on January 4, 2006, Dr. Weber "begged him please not to lie to me about" the relief he got from shoulder injections. (Tr. 390). In addition, Dr. Rogers noted that, on the same date, Plaintiff reported that physical therapy did not provide any significant relief from pain, but also reported that physical therapy and massage therapy did give him some relief of his pain. (Tr. 277-78).

Finally, Plaintiff testified at the hearing that was responsible for taking care of his sister who is handicapped and his father who has Alzheimer's, walks about one and one half mile a day, walks three miles to the store if his mother is at work and he needs milk or bread, attends church about once a month, goes to his neighbors' to visit, calls his girlfriend every other day and visits with her three times a week, watches television, draws, reads, travels by car to Indianapolis to visit family about once every two months, packs his brother's lunch, prepares meals for his sister and father, keeps his sister's and father's room clean, does as much as possible for his mother, reads, and goes grocery shopping with his mother about once a week, (Tr. 483-90; 495-97). In addition, Plaintiff reported to Dr. Boerger that he does laundry and goes to the Eagles Lodge with his brother. (Tr. 160). The Commissioner may, of course, consider a claimant's activities in evaluating credibility. *See, Warner v. Commissioner of Social Security,* 375 F.3d 387, 392 (6th Cir. 2004).

Under these facts, this Court concludes that the Commissioner did not err in evaluating Plaintiff's credibility or by concluding that he was not entirely credible.

Plaintiff argues next that this matter should be remanded for the consideration of the evidence he submitted to the Appeals Council.

The additional evidence at issue consists of medical reports from Dr. Goodall dated June and July 2007, reports from Dr. Minella dated October 6, 2006, through April 4, 2007, and hospital records which reveal that Plaintiff underwent a cervical diskectomy and fusion in September, 2006, and a posterior cervical foraminotomy in February, 2007. (Tr. 441-70).

The remand provision of 42 U.S.C. §405(g) provides that the court may order a case remanded to the Commissioner for further consideration "only upon a showing that there is new evidence which is material and there is good cause for the failure to incorporate such evidence into

14

the record in a prior proceeding." 42 U.S.C. §405(g); *see also, Casey v. Secretary of Health and Human Services,* 987 F.2d 1230, 1233 (6th Cir. 1993).

The court may review new evidence submitted after the Administrative Law Judge's decision for the limited purpose of determining the appropriateness of a remand to the Commissioner under sentence six of 42 U.S.C. §405(g). *Wyatt v. Secretary of Health and Human Services,* 974 F.2d 680, 685 (6th Cir. 1992). Such remand is appropriate, however, only if the court finds that the evidence is new and material and there is good cause for the failure to incorporate that evidence into the record of the prior proceeding. *Sizemore v. Secretary of Health and Human Services,* 865 F.2d 709, 711 (6th Cir. 1988).

To establish materiality, the plaintiff must show, "a reasonable probability that the Commissioner would have reached a different disposition of the disability claim if presented with the new evidence." *Sizemore,* 865 F.2d at 711 (citations omitted). New evidence on an issue already fully considered by the Commissioner is cumulative and is not sufficient to warrant remand of the matter. *Carroll v. Califano,* 619 F.2d 1157, 1162 (6th Cir. 1980). Additional evidence is material only if it concerns the plaintiff's condition prior to the Commissioner's decision. *Oliver v. Secretary of Health and Human Services,* 804 F.2d 964, 966 (6th Cir. 1986). Evidence of a subsequent deterioration or change in the plaintiff's condition after the administrative hearing is deemed immaterial. *Wyatt,* 974 F.2d at 685, *citing, Sizemore,* 865 F.2d at 712.

To show good cause, plaintiff must present some justification for the failure to have acquired and presented such evidence to the Commissioner for inclusion in the record during the hearing before the Administrative Law Judge. *See, Willis v. Secretary of Health and Human Services,* 727 F.2d 551 (6th Cir. 1984); *see also, Oliver, supra.* Additional evidence generated for

the purpose of attempting to prove disability in contrast to evidence produced by continued medical treatment does not meet the good cause requirement of the Act. *Koulizos v. Secretary of Health and Human Services,* No. 85-1654 (6th Cir. Aug. 9, 1986) (table 802 F.2d 458).

A remand for the consideration of additional evidence is a "sixth sentence" remand, *see, Sullivan v. Finkelstein,* 496 U.S. 617 (1990), and is a pre-judgment remand. *Faucher v. Secretary of Health and Human Services,* 17 F.3d 171, 175 (6th Cir. 1994) (citations omitted). Following such a remand, the Commissioner shall, after the case is remanded and after hearing such additional evidence if so ordered, modify or affirm the findings of fact or decision, or both, and shall file with the court any such additional and modified findings of fact and decision. *Finkelstein, supra.* Stated differently, in the case of a "sixth sentence" remand, the district court retains jurisdiction so that following this type of remand, it may review such additional or modified findings.

Even assuming that the records Plaintiff submitted to the Appeals Council are material, Plaintiff has failed to show good cause for failing to submit them to Judge Padilla before the judge issued his decision.

Judge Padilla held the hearing in this matter on August 9, 2006. (Tr. 471-504). At the outset of the hearing, Judge Padilla inquired of Plaintiff's counsel as to whether there was any outstanding evidence. *Id.* Counsel requested and was granted an additional two weeks to submit opinion evidence from Dr. Minella. *Id.* Plaintiff did not request any additional extension between the time of the hearing and when Judge Padilla issued his decision. Instead, Plaintiff submitted the records to the Appeals Counsel on August 31, 2007, and September 7, 2007, some five months after Judge Padilla issued his decision on June 11, 2007, and about nine months after Plaintiff's first

16

surgery and related treatment. Indeed, Plaintiff underwent the first surgery just one month after the hearing. Nevertheless, Plaintiff apparently made no attempt to provide the records to Judge Padilla and has failed to offer reasonable justification for his nine-month failure to do so.

This Court concludes that under these facts, a sixth sentence remand is not appropriate in this case.

Our duty on appeal is not to re-weigh the evidence, but to determine whether the decision below is supported by substantial evidence. *See, Raisor v. Schweiker,* 540 F.Supp. 686 (S.D.Ohio 1982). The evidence "must do more than create a suspicion of the existence of the fact to be established. ... [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *LeMaster v. Secretary of Health and Human Services,* 802 F.2d 839, 840 (6th Cir. 1986), *quoting, NLRB v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300 (1939). The Commissioner's decision in this case is supported by such evidence.

It is therefore recommended that the Commissioner's decision that Plaintiff was not disabled and therefore not entitled to benefits under the Act be affirmed.

January 21, 2010.

*s/ Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by

the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).